**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Reuben Charles Cowan, | CIV 15-00756-PHX-DLR (MHB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Laura Escapule, et al., | |
| Respondents. | |

TO THE HONORABLE DOUGLAS L. RAYES, UNITED STATES DISTRICT JUDGE:

Petitioner Reuben Cowan, who is confined in the Arizona State Prison, Cimarron Unit, Tucson, Arizona, has filed a *pro se* Amended Petition for Writ of Habeas Corpus (hereinafter "amended habeas petition") pursuant to 28 U.S.C. § 2254 (Doc. 4). Respondents filed an Answer on August 12, 2015 (Doc. 12). On August 27, 2015, Petitioner filed a Reply to Respondents' Answer (Doc. 13).

Petitioner lists two grounds for habeas relief, all which he claims resulted in a violation of his Sixth Amendment right to the effective assistance of counsel under the United States Constitution:

> Ground One:  Petitioner's counsel provided ineffective assistance at trial, when counsel failed to object to the presentation of highly prejudicial and multi-layered hearsay testimony from Detective Schira - specifically, Detective Schira was allowed to testify that another detective told him that he heard that "[s]omebody said a word on the street that [Petitioner] had bragged about doing this."

> Ground Two:  Because of trial counsel's ineffective assistance, Petitioner was unconstitutionally denied due process under the Fifth and Fourteenth Amendments of the United States Constitution when he was convicted based upon evidence insufficient to a finding of guilt beyond a reasonable doubt.

(Doc. 4 at 5, 7.)

1    Respondents assert that Petitioner has failed to exhaust ground one of his amended

2  habeas petition and it is procedurally defaulted, and that ground two of Petitioner's amended

3  habeas petition lacks merit.  (Doc. 12 at 2.)  Respondents request that the Court dismiss

4  Petitioner's petition with prejudice.

5                                    **BACKGROUND**

6  **I.    Trial and Appellate Court Proceedings.**

7    Petitioner was charged by indictment with one count of first degree murder, pled

8  alternatively as premeditated and felony-murder (count 1), one count burglary in the first

9  degree (count 2), two counts attempted armed robbery (counts 3 and 4), and as an accomplice

10  to all counts.  (Exh. G.)[1]  Petitioner went to trial on the charges, and was subsequently found

11  guilty of felony-murder (count 1), burglary in the first degree (count 2), and two counts of

12  attempted armed robbery (counts 3 and 4).  (Exh. H at 10-11.)  The trial court sentenced him

13  to life in prison for the murder conviction, 10-and-a-half years for the burglary conviction,

14  and 7-and-a-half years each for the attempted armed robbery convictions.  (Exh. I at 39-40.)

15  Petitioner, through counsel, raised one issue on appeal - that the state failed to produce

16  substantial evidence to support a conviction, and thus the trial court erred in denying

17  Petitioner's motion for judgment of acquittal.  (Exh. K at 2.)  The Arizona Court of Appeals

18  affirmed, finding that the trial evidence was "sufficient to survive [Petitioner]'s motion for

19  judgment of acquittal and to support his convictions for first-degree burglary and attempted

20  armed robbery, and for felony murder, for causing the victim's death during the course of and

21  in furtherance of these offenses."  (Exh. N at 3.)  The court further explained:

22    ¶6    The victim's girlfriend testified that she and her boyfriend awoke
       sometime after 10 p.m. to the sound of a loud noise "like a crash or something
23     breaking."  Her boyfriend went to the living room, and she heard a male
       repeatedly asking, "Where's the money?"  She then heard the sound of five or
24     six gunshots.  A man holding a gun then entered the master bedroom and also
       demanded of her, "Where's the money?"  The victim's girlfriend heard the
25     voice of only one person the entire time.  The victim died of gunshot wounds
       to the chest and back.
26

27  ─────────────────────

28    [1]All exhibits referenced herein are attached as exhibits to Respondents' Answer (Doc.
     12.)

¶7      Police identified [Petitioner]'s fingerprint in the blood on the master bedroom door.  Police also identifed [Petitioner]'s fingerprint on the top part of the west security gate adjacent to the victim's apartment.  The victim's DNA was identified as the major contributor to a bloodstain that also was found on the west security gate, and [Petitioner]'s DNA could not be excluded as a minor contributor.

¶8      Police found $10,100 in cash in a drawer in the master bedroom and twelve pounds of marijuana elsewhere in the condominium.    The condominium's back door was cracked as if it had been kicked in.  A neighbor and her visitor saw two men running away from the rear of the condominium immediately after they heard the gunshots, but they could offer only a general description and could not identify anyone.

¶9      When he was arrested eight months after the murder, [Petitioner] first denied knowing the victim or ever having been to his condominium, but later equivocated and said it was possible that he purchased marijuana from the victim at some point.  At trial, [Petitioner] testified he had gone to the condominium the night of the murder to buy marijuana, having purchased marijuana there two weeks earlier.   He testified he entered the dark condominium through an open back door, heard shooting, and must have left his finger print on the master bedroom door by accident while he tried to avoid the gunfire.  He said he saw a man holding a gun in the bedroom, and stumbled over a man lying on the floor on the way out. [Petitioner] did not claim to have sustained any injury causing him to bleed while at the condominium, and he explained that he did not realize blood was on his hands. . . .,

¶11     It was for the jury, not us, to determine the credibility of [Petitioner]'s explanation of why his fingerprint was in blood on the bedroom door and on the gate with a bloodstain matching the victim's DNA (the west security gate). On this record, the jury could reasonably infer that [Petitioner] had gone to the condominium of a person whom he knew dealt marijuana with the intent of robbing him at gunpoint, kicked in the back door to gain entry, demanded money from the victim resulting in the victim's murder, and then entered the master bedroom wielding the firearm and demanded money from the victim's girlfriend.  We find the evidence sufficient to support the denial of the motion for judgment of acquittal and to support the convictions.

(Id. at 4-6.)

Petitioner filed a petition for review to the Arizona Supreme Court, and that petition was summarily denied on July 23, 2013.  (Exh. O.)

## II.    State Post-Conviction Proceedings.

On August 19, 2013, Petitioner filed a timely Notice of Post-Conviction Relief and Petition for Post-Conviction Relief ("PCR").  (Exhs. Q, R.)  In his PCR, Petitioner checked 14 boxes on the form petition that denoted generic grounds for post-conviction relief.  (Exh. R at 1-2.)  On August 28, 2013, the trial court appointed counsel for petitioner and ordered that the petition for post-conviction relief be filed within 60 days.  (Exh. S.)  PCR counsel

1    filed two subsequent motions to extend the deadline to file a petition, which were both

2    granted by the court. (Exhs. T, U, V, W.)  On March 28, 2014, PCR counsel filed a Notice

3    of Completion of Post-Conviction Review and Request for Extension of Time to Allow

4    Petitioner to Proceed *Pro Per*, indicating that he had "communicated with Petitioner,

5    reviewed the transcripts and all relevant documents in this matter, and [was] unable to

6    discern any colorable claim upon which to base a Petition for Post-Conviction Relief." (Exh.

7    X.)  PCR counsel also filed a PCR Counsel's Notice of Compliance, indicating to the court

8    that he "had no files or documents in his possession that [Petitioner] did not already have."

9    (Exh. Y.)

10        The trial court thereafter ordered that PCR counsel immediately forward Petitioner

11   the complete trial and appellate files and transcripts in his possession no later than May 1,

12   2014, and that PCR counsel then file a Notice of Compliance that includes an "itemization

13   of what constituted 'the file' as well as the method of delivery." (Exh. Z.)  The court order

14   also gave Petitioner until June 2, 2014, to file a *pro per* PCR petition.  (Id.)  Thereafter,

15   Petitioner filed two motions for extension of time to file his petition[2], which the court

16   granted, ultimately extending the deadline to August 22, 2014. (Exhs. AA-DD.)  The court

17   warned Petitioner each time an extension was granted that no further extensions would be

18   granted "absent a showing of extraordinary circumstances." (Exhs. BB, DD.)  Just prior to

19   the last deadline, Petitioner filed with the court, on July 29, 2014, a letter he had written to

20   PCR counsel requesting that he provide Petitioner "all the paperwork you have concerning

21   my case." (Exh. EE.)

22        In response to Petitioner's letter, the court, on October 1, 2014, ordered PCR counsel

23   to file an amended Notice of Compliance by October 15, 2014, specifically finding that

24   counsel's prior Notice of Compliance was "wholly inadequate." (Exh. FF.)  PCR counsel

25   filed an Amended Notice of Compliance, in which he described the documents in Petitioner's

26   possession:

27   ───────────────

28        [2]In neither request for extension does Petitioner complain of not having documents
     necessary to frame his PCR claims.

1    Despite the Court's initial PCR Order of 8/28/13, no prior counsel ever
     supplied undersigned with any materials, and no prior counsel ever filed a
2    Notice of Compliance.

3    Nevertheless, in correspondence with the defendant, and an extensive legal
     call, undersigned ascertained from defendant that he had the entire Record and
4    transcripts in his possession. Indeed, in defendant's first letter to undersigned,
     dated 9/1/13, in response to undersigned's introductory letter requesting
5    defendant's input on potential PCR issues, defendant asked for time to "go
     through all my legal work and trial transcripts."
6    (Exh. GG.)

7    PCR counsel also stated that Petitioner had even offered to send counsel trial

8    transcripts that had not yet appeared on the electronic court record for counsel to view, but

9    that counsel declined the offer. (Id.) Subsequent to PCR counsel's Amended Notice of

10   Compliance, on October 16, 2014, the trial court dismissed the PCR proceedings, as the due

11   date (August 22, 2014) had passed, and Petitioner had not yet filed a petition and had not

12   secured additional extensions. (Exh. HH.) Petitioner did not file a petition for review to the

13   Arizona Court of Appeals of the trial court's dismissal of PCR proceedings. (Exh. II.)

14   On October 17, 2014, after the trial court had dismissed his PCR proceedings,

15   Petitioner filed a letter to the court in which he requested that his attorney provide him with

16   the "Attorney File." (emphasis in original) (Exh. JJ). Petitioner did not identify what in

17   particular this attorney file would contain, but asserts that it will "demonstrate and prove that

18   counsels actions/inactions reflect unethical or improper statements to deny [Petitioner] the

19   effective counsel assistance of protecting ALL [Petitioner]'s rights." (Id. at 4.) On

20   November 24, 2014, the trial court issued another minute entry finding Petitioner's PCR

21   counsel's Amended Notice of Compliance inadequate, in that he did not adequately satisfy

22   the court that he had reviewed and provided the necessary trial record to reach a conclusion

23   that there existed no colorable claims. (Doc. KK.) The court ordered Petitioner's PCR

24   counsel to supplement his response "to include whether additional components of the PCR

25   file exist and if not, what was considered prior to filing the notice of completion, . . . [and]

26   [i]f additional documents exist, they shall be forwarded to defendant." (Id.)

27   PCR counsel subsequently filed a supplement to his earlier notice of compliance,

28   indicating that "the entirety of the file received by undersigned, consisting of Minute Entries,

1   Pleadings, Police Reports, trial counsel notes, and Discovery on CDs from the Maricopa
2   County Attorney's Office, was shipped to defendant on December 19, 2014, via USPS
3   Priority Mail." (Doc. NN.) Petitioner filed no additional pleadings in response, or thereafter.
4   (Exh. OO; Doc. 12, n 4.)  Petitioner filed his amended habeas petition on April 24, 2015.

5                                **DISCUSSION**
6   **I.     Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).**
7           **A.     Exhaustion and Procedural Default**

8           Respondents assert that ground one of Petitioner's amended habeas petition is
9   procedurally defaulted.  Before a federal court may grant habeas corpus relief to a state
10  prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. §
11  2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Coleman v. Thompson, 501
12  U.S. 722, 731 (1991).  The federal court will not entertain a petition for writ of habeas corpus
13  unless each and every issue has been exhausted.  Pliler v. Ford, 542 U.S. 225, 230 (2004);
14  Rose v. Lundy, 455 U.S. 509, 521-22 (1982).  To properly exhaust state remedies, the
15  prisoner must have afforded the state courts the opportunity to rule upon the merits of his
16  federal constitutional claims by "fairly presenting" them to the state courts in a procedurally
17  appropriate manner.  Castille v. Peoples, 489 U.S. 346 (1989); Baldwin v. Reese, 541 U.S.
18  27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the
19  prisoner must 'fairly present' her claim in each appropriate state court . . . thereby alerting the
20  court to the federal nature of the claim.").  A petitioner must describe both the operative facts
21  and the federal legal theory so that the state courts have a "fair opportunity" to apply
22  controlling legal principles to the facts bearing on his constitutional claim.  Id., at 33.  In
23  cases not carrying a life sentence or the death penalty, claims are exhausted once the Arizona
24  Court of Appeals has ruled on them.  Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir.
25  1999).

26          Where a prisoner fails to "fairly present" a claim to the state courts in a procedurally
27  appropriate manner, his claims are procedurally defaulted.  Ylst v. Nunnemaker, 501 U.S.
28  797, 802-05 (1991); Coleman, 501 U.S. at 731-32. There are two types of procedural default.

1    First, a state court may have applied a procedural bar when the prisoner attempted to

2    raise the claim in state court.  Nunnemaker, 501 U.S. at 802-05.  For example, a habeas

3    petitioner may be barred from raising federal claims that he failed to preserve in state court

4    by making contemporaneous objections at trial or by raising the claim on direct appeal or

5    post-conviction review.  Bonin v. Calderon, 59 F.3d 815, 841-42 (9th Cir. 1995)(stating that

6    failure to raise contemporaneous objection at trial to an alleged violation of federal rights

7    constitutes a procedural default of that issue); Thomas v. Lewis, 945 F.2d 1119, 1121 (9th Cir.

8    1991)(finding procedural default where the Arizona Court of Appeals held that petitioner had

9    waived his claims by failing to raise them on direct appeal or in his first petition for post-

10   conviction review.)  If the state court found a procedural bar but also addressed the merits

11   of the underlying federal claim, the "alternative" ruling does not vitiate the independent state

12   procedural bar.  Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Carriger v. Lewis, 971 F.2d

13   329, 333 (9th Cir. 1992) (en banc court held that a state court may alternatively deny relief

14   on the merits of a federal constitutional claim even after dismissing the claim on procedural

15   grounds).

16   A higher court's subsequent summary denial of review affirms the lower court's

17   application of a procedural bar.  Nunnemaker, 501 U.S. at 803.  In order to "constitute

18   adequate and independent grounds sufficient to support a finding of procedural default, a

19   state rule must be clear, consistently applied, and well-established at the time of the

20   petitioner's default."  Wells v. Maass, 28 F.3d 1005, 1010 (9th Cir. 1994).  Arizona courts

21   have consistently applied their procedural default rules.  Stewart v. Smith, 536 U.S. 856, 860

22   (2002)(holding that Arizona Rule of Criminal Procedure 32.2(a) is an adequate and

23   independent procedural bar); Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998)(rejecting

24   the argument that Arizona courts have not "strictly or regularly followed" Rule 32); Carriger

25   v. Lewis, 971 F.2d 329, 333 (9th Cir. 1992)(rejecting the assertion that Arizona courts'

26   application of procedural default rules had been "unpredictable and irregular.").

27   In the second procedural default scenario, the state prisoner may not have presented

28   the claim to the state courts, but pursuant to the state courts' procedural rules, a return to state

court would be "futile." Teague v. Lane, 489 U.S. 288, 297-99 (1989). Generally, any claim not previously presented to the Arizona courts is procedurally barred from federal review because any attempt to return to state court to properly exhaust a current habeas claim would be "futile." Ariz. R. Crim. P. 32.1, 32.2(a) & (b); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002); Ariz. R. Crim. P. 32.1(a)(3) (relief is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); Ariz. R. Crim. P. 32.4 (stating that in a Rule 32 of-right proceeding, notice of post-conviction relief must be filed within 90 days after entry of judgment and sentence or within 30 days appellate mandate); Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's decision). A state post-conviction action is futile where it is time barred. Beaty, 303 F.3d at 987; Moreno v. Gonzalez, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)).

In either case of procedural default, federal review of the claim is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." Dretke v. Haley, 541 U.S. 386, 393-94 (2004). To establish cause, a petitioner must establish that "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986) The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. Id. To establish prejudice, a prisoner must demonstrate that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis omitted). Where petitioner fails to establish cause, the court need not reach the prejudice prong.

To establish a "fundamental miscarriage of justice" resulting in the conviction of one who is actually innocent, a state prisoner must establish that it is more likely than not that no

reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence.  Schlup v. Delo, 513 U.S. 298, 327 (1995); 28 U.S.C. § 2254(c)(2)(B).

Ground One: ineffective assistance of counsel - trial counsel's failure to object to hearsay testimony from Detective Schira.

Petitioner did not present this claim on appeal or in post-conviction proceedings. Petitioner asserts in his Reply to Respondents' Answer to his amended habeas petition that this issue was raised in his reply brief on appeal to the Arizona Court of Appeals.  The only issue identified in Petitioner's appellate brief was that the state failed to produce substantial evidence to support a conviction.  (Exh. K.)  Petitioner claims that the following paragraph in his reply brief alerted the court to the hearsay issue:

> No witness testified that they heard Cowan brag about murdering Gosa. Appellee argued that Cowan bragged that he committed the murder.  The record shows that on cross-examination by defense counsel, Detective Schira testified that Detective Verthein told him that he heard that "Somebody said a word on the street that Mr. Cowan had bragged about doing this."  Appellee asks this court to find that this multi-level hearsay statement satisfied the substantial evidence required to withstand a motion for judgment of acquittal...Respectfully, a rumor on the street is not adequate and sufficient to support a conclusion of Cowan's guilt beyond a reasonable doubt.

(Doc. 13 at 3.)

This discussion however, was in the context of the larger discussion of the issue raised in Petitioner's appeal - the sufficiency of the evidence.  (Exh. M.)  This excerpt from Petitioner's reply brief, is in response to Appellee's arguments regarding the evidence supporting the guilty verdicts, and did not "raise" the hearsay/ineffective assistance of counsel issue as an independent constitutional issue on appeal.

Petitioner also argues that, in his initial PCR notice he had identified as an issue "[T]he introduction at trial of an identification obtained in violation of constitutional rights (and)...[T]he denial of the constitutional right to representation by a competent lawyer at every critical stage of the proceedings."  (Doc. 13 at 4; Exh. R at 1-2.)  Merely checking the boxes on the PCR form asserting generic constitutional violations does not sufficiently describe both the operative facts and the federal legal theory so that the state court had a "fair opportunity" to apply controlling legal principles to the facts bearing on Petitioner's constitutional claim.  Baldwin, at 541 U.S. at 33.

Additionally, Petitioner was given the opportunity to file a *pro per* PCR petition once his PCR counsel withdrew after finding no colorable claims to raise, and was then given two extensions of time by the court.  Instead of filing a petition, Petitioner filed letters with the court indicating that he wanted the "paperwork" and the "attorney file" but did not identify what documents he did not have but needed to obtain in order to prepare his petition.  Additionally, he did not dispute PCR counsel's representation to the court that Petitioner had in his possession the "entire record and transcripts."

Petitioner does not attach or cite any record to support this claim in his amended habeas petition.  He asserts that his trial counsel should have objected to the trial testimony of Detective Schira - specifically, that another detective had told him about hearing somebody say a word on the street that Petitioner had bragged about the crimes.  This was testimony that Petitioner heard during his trial, and this same testimony was discussed in Petitioner's state appellate court brief.  Petitioner can not demonstrate that he was deprived of the necessary records to raise this claim in a PCR petition.  Petitioner claims that his PCR counsel abandoned him and that he received conflicting messages from the court when it continually ordered updates to PCR counsel's notice of compliance.  The trial court was clear, however, that Petitioner was to file his *pro se* PCR petition by a date certain, and when the trial court dismissed Petitioner's PCR proceedings on October 16, 2014, because he had not filed a petition, Petitioner did not seek reconsideration of that order, or file a petition for review of that dismissal with the Arizona Court of Appeals.

Finally, although the last notice of compliance supplement filed by Petitioner's PCR counsel, indicated that he had sent "the entirety of the file" he had received to Petitioner on December 19, 2014, Petitioner does not identify any document received in that mailing that he did not already possess, or that was necessary for him to present his claim.  Even assuming that PCR counsel's compliance filings and the trial court's delayed orders caused confusion, this does not explain (1) Petitioner's failure to file a PCR petition by the due date of August 22, 2014, (2) no action on Petitioner's part between that date and October 17, 2014, when Petitioner sent a letter to the trial court, and (3) Petitioner's failure to file a

petition for review of the trial court's dismissal to the Arizona Court of Appeals. This purported "confusion" also does not explain complete inaction on Petitioner's part after PCR counsel's last compliance filing, on December 23, 2014.

Petitioner's claim is procedurally defaulted because any attempt to return to state court would be futile, as Petitioner would be time-barred from presenting his claim. Ariz. R. Crim. P. 32.4 (stating that in a Rule 32 of-right proceeding, notice of post-conviction relief must be filed within 90 days after entry of judgment and sentence or within 30 days appellate mandate); Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's decision). Petitioner's claim is barred then from federal review absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." Dretke, 541 U.S. at 393-94.

Petitioner claims that he is a "lay person," and "not an expert in the requirements for exhaustion," and that he "believed that his Arizona Post-Conviction Petition was exhausted on August 22, 2014, when his supplemental brief in support was due." (Doc. 13 at 6.) Petitioner does not demonstrate cause for his default, as he does not identify "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rules." Murray, 477 U.S. at 488. Although PCR counsel's attempt to file an adequate notice of compliance was muddled at best, the lack of clarity as to the documents counsel received and reviewed does not excuse Petitioner's complete inaction, particularly considering that Petitioner possessed the information he needed to adequately present his claim. Petitioner also fails to demonstrate a fundamental miscarriage of justice resulting in the conviction of one who is actually innocent - he does not establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence.

The evidence against Petitioner was sufficient to establish guilt beyond a reasonable doubt even without the hearsay testimony of Detective Schira. Petitioner was identified as having been at the scene of the murder by his own fingerprints and palm print, in the victim's blood, found both inside and outside of the victim's condo. (Exh. C at 24, 126.) Petitioner's

1   fingerprints and palm print were identified on the exterior gate of the condominium complex,

2   in the victim's blood.  (Exh. C at 10-12, 131-32; Exh. D at 14, 17-21.)   Additionally,

3   Petitioner's own DNA could not be excluded from the blood on the gate.  (Exh. D at 33.)

4   Witnesses saw two men running together from the scene of the crime, although they did not

5   get a close enough look to identify either one of them.  (Exh. B at 109-12, 126, 152-53.)

6          Petitioner testified during his trial and admitted that he was in the victim's condo at

7   the time of the murder, that he had walked into the condo through the back door to purchase

8   marijuana from the victim, even though he claimed that another person committed the murder

9   while he was present.  (Exh. F at 34-38.)  Despite the Petitioner's fingerprint having been

10  found inside the victim's residence, Petitioner denied any knowledge of the murder when

11  arrested and interviewed by Detective Verthein and when confronted about his bloody

12  fingerprints. (Exh. F at 41-43, 46-47.) Petitioner's trial testimony was also inconsistent with

13  the physical evidence.  His recounting of the murder, that he fell to the floor when he heard

14  the shooting, then "advanced" toward the bedroom door, "pushed the door open," and then

15  turned around after having seen a "man with a gun," and the stumbled over the victim while

16  exiting the condo, did not explain why his fingerprint, in the victim's blood was on the

17  bedroom door panel if he had only stumbled over the victim while exiting the condo.  (Exh.

18  F at 34-38; Exh. C at 24.)

19         Petitioner also had motive, as he admitted that he had previously been to the victim's

20  condo to purchase marijuana, and thus knew the victim sold marijuana and likely kept money

21  at his condo.  This was consistent with the victim's girlfriend's testimony that she heard the

22  intruder demand to know where the victim kept the money.  (Exh. F at 24-28; Exh. C at 49-

23  51.)  Petitioner has failed to demonstrate prejudice or a miscarriage of justice to excuse his

24  procedural default.  See Schlup, 513 U.S. at 327; see also Bousley v. United States, 523 U.S.

25  614, 623-24 (1998) (noting "actual innocence" under Schlup "means factual innocence, not

26  mere legal insufficiency").  "To be credible, [an actual-innocence] claim requires petitioner

27  to support his allegations of constitutional error with new reliable evidence–whether it be

28

exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence–that   was not presented at trial." Schlup, 513 U.S. at 324.

Even if this Court were to conclude that Petitioner's PCR counsel was ineffective for not raising a claim that trial counsel was ineffective, there is no prejudice.  In order to prevail on a claim of ineffective assistance of counsel, a prisoner must demonstrate that  "(1) the performance of his attorney was deficient or unreasonable under all the circumstances, or (2) that there is a reasonable probability that, but for his attorneys' alleged unprofessional errors, the result of the proceedings would have been different." Strickland v. Washington, 446 U.S. 668 (1984). If the prisoner is able to satisfy the performance prong, he must also establish prejudice. See id. at 691-92; see also Smith v. Robbins, 528 U.S. 259, 285 (2000) (burden is on defendant to show prejudice). To establish prejudice, a prisoner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. A court need not determine whether counsel's performance was deficient before examining whether prejudice resulted from the alleged deficiencies. See Smith, 528 U.S. at 286 n.14. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. (quoting Strickland, 466 U.S. at 697).

Even assuming that Petitioner's PCR counsel was ineffective in not raising the claim, Petitioner can not demonstrate prejudice.  Had Petitioner's PCR counsel raised the issue, and had the trial court found trial counsel ineffective by not objecting to the hearsay evidence, Petitioner can not demonstrate that there is a reasonable probability that without the hearsay evidence (assuming trial counsel's objection had been sustained), the result of the proceeding would have been different, that is, that the jury would not have found guilt beyond a reasonable doubt.  As set forth above, the evidence of Petitioner's guilt was overwhelming without the hearsay evidence. The Arizona Court of Appeals, in concluding that the evidence

1   presented at trial was sufficient to support the convictions, did not include the hearsay

2   evidence in its analysis. (Exh. N at 4-6.)

3   **B.     Merits Analysis**

4   Respondents assert that ground two of his amended habeas petition should be denied

5   on the merits.  In reviewing a cognizable claim under the AEDPA, a federal court "shall not"

6   grant habeas relief with respect to "any claim that was adjudicated on the merits in State

7   court proceedings" unless the State court decision was (1) contrary to, or an unreasonable

8   application of, clearly established federal law as determined by the United States Supreme

9   Court; or (2) based on an unreasonable determination of the facts in light of the evidence

10  presented in the State court proceeding.  28 U.S.C. § 2254(d); see Williams v. Taylor, 529

11  U.S. 362, 412-413 (2000) (O'Connor, J., concurring and delivering the opinion of the Court

12  as to the AEDPA standard of review).  "When applying these standards, the federal court

13  should review the 'last reasoned decision' by a state court ...." Robinson v. Ignacio, 360 F.3d

14  1044, 1055 (9th Cir. 2004).

15  A state court's decision is "contrary to" clearly established precedent if (1) "the state

16  court applies a rule that contradicts the governing law set forth in [Supreme Court] cases,"

17  or (2) "if the state court confronts a set of facts that are materially indistinguishable from a

18  decision of [the Supreme Court] and nevertheless arrives at a result different from [its]

19  precedent."  Taylor, 529 U.S. at 405-06.  "A state court's decision can involve an

20  'unreasonable application' of Federal law if it either (1) correctly identifies the governing rule

21  but then applies it to a new set of facts in a way that is objectively unreasonable, or (2)

22  extends or fails to extend a clearly established legal principle to a new context in a way that

23  is objectively unreasonable."  Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002)

24  (citation omitted).   This Court must "presume the correctness of [the] state courts' factual

25  findings" and a petitioner has the burden to "rebut this presumption with 'clear and

26  convincing evidence.'" Schriro v. Landrigan, 550 U.S. 465, 473-474 (2007) (quoting 28

27  U.S.C. §2254(e)(1)).

28

1

<u>Ground Two</u>: ineffective assistance of counsel - trial counsel's failure to object to conviction based upon insufficient evidence.

2

3      Petitioner claims that he was denied effective assistance of counsel when he was

4  convicted based upon evidence insufficient to support a finding of guilt beyond a reasonable

5  doubt on the charges.  Petitioner's trial counsel moved for judgment of acquittal at the end

6  of the state's evidence, and Petitioner challenged the denial of that motion on appeal.[3]

7  Essentially, Petitioner's habeas claim rests upon Petitioner's Fifth and Fourteenth

8  Amendment Due Process right to be convicted only upon sufficient evidence.  <u>See</u> <u>Jackson</u>

9  <u>v. Virginia</u>, 443 U.S. 307 (1979).  The Arizona Court of Appeals denied this claim, finding

   that the evidence presented at trial was sufficient to support Petitioner's convictions:

10

11         We find that the evidence was sufficient to survive [Petitioner]'s motion for
           judgment of acquittal and to support his convictions for first-degree burglary
12         and attempted armed robbery, and for felony murder, for causing the victim's
           death during the course of and in furtherance of these offenses. [].  As charged
13         here, first-degree burglary requires proof that the defendant unlawfully entered
           a residential structure armed with a deadly weapon, with the intent to commit
14         theft or any felony therein. [].  Attempted armed robbery requires proof that a
           person armed with a deadly weapon attempted to take property from another's
15         person or immediate presence against his will by using threats or force with
           intent to coerce surrender of the property. [].

16  (Exh. N at 3-4.)

17      For the reasons set forth in the above analysis of the sufficiency of the evidence to convict

18  Petitioner, the state appellate court decision was not  contrary to, or an unreasonable

19  application of, clearly established federal law as determined by the United States Supreme

20  Court, or based on an unreasonable determination of the facts in light of the evidence

21  presented in the State court proceeding.

22  \\\

23  \\\

24  \\\

    \\\

25

26

27      [3]Petitioner does not identify in what ways his trial counsel was ineffective in allowing
    him to be convicted upon insufficient evidence, other than to repeat his claim that counsel
28  should have prevented the hearsay evidence from being admitted.  (Doc. 4 at 7; Doc. 13 at
    9-12.)

**CONCLUSION**

For the foregoing reasons, this Court finds that ground one of Petitioner's amended habeas petition is procedurally defaulted and Petitioner has not established cause to excuse the default, or that a fundamental miscarriage of justice occurred, and that ground one alternatively fails on the merits. This Court furthermore finds that ground two of Petitioner's amended habeas petition fails on the merits. Wherefore, this Court will recommend that Petitioner's Amended Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 4) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because dismissal of the amended habeas petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable, and Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121

(9th Cir. 2003).   Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.   <u>See</u> Rule 72, Federal Rules of Civil Procedure.

DATED this 11th day of April, 2016.

_Michelle H. Burns_

Michelle H. Burns
United States Magistrate Judge